AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of                                )
*(Briefly describe the property to be searched*                )
*or identify the person by name and address)*                  )       Case No.  18- **140 M**
                                                               )
To Search  the Extraction of Cell Phone Data                   )
Located at the ATF Field Office                                )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

   See Attachment A

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:
   See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☑ contraband, fruits of crime, or other items illegally possessed;

   ☑ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 841(a)(1), (b)(1)(C) | Distribution of Heroin |

The application is based on these facts:
See attached Affidavit

   ☑ Continued on the attached sheet.

   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
      under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

James Reisch, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 08/01/2018 _____

_____
*Judge's signature*

City and state:  Wilmington, Delaware

Mary Pat Thyne, Chief U.S. Magistrate Judge
*Printed name and title*

2018 AUG -1  PM 1:28

## IN THE UNITED STATES DISTRICT COURT
## FOR  THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF
THE EXTRACTION OF:

APPLE IPHONE 6S, IMEI: 354957070565836

CURRENTLY LOCATED AT:

Case No. *18-140 M*

ATF Wilmington Field Office secured
evidence storage, 1007 North Orange Street,
Suite 201, Wilmington, Delaware 19801

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

Your affiant, James H. Reisch, being first duly sworn, hereby deposes and states as

follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      Your affiant makes this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant authorizing the examination of

property – an electronic device – which is currently in law enforcement possession, and the

extraction from that property of electronically stored information described in Attachment B.

2.      Your affiant am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms

and Explosives (hereinafter "ATF") and have been so employed since May of 2015. Your affiant

is currently assigned to the Wilmington, Delaware Field Office within the Baltimore Field

Division. Your affiant is a graduate of the Federal Law Enforcement Training Center's Basic

Criminal Investigator Program and the ATF's Special Agent Basic Training Program. Prior to

your Affiant's employment with ATF, your affiant was a sworn law enforcement officer with the

Virginia Department of State Police for ten (10) years. Your affiant spent four (4) years assigned

to the Bureau of Criminal Investigation, General Investigation Section, Violent Crime Unit. This assignment as well as your affiant's previous six (6) years as a uniformed Virginia State Police Trooper afforded your affiant the opportunity to investigate and/or arrest and prosecute hundreds of individuals, for violent crimes, white collar crimes, cyber crimes, threats of death or bodily harm against persons, and numerous other criminal offenses in violation of the Code of Virginia and the United States Code. During that time, your affiant attended schools on homicide, child abduction, child death investigation, serial killers, criminal profiling, statement analysis, interview and interrogation, hostage negotiation, and crime scene forensics. Your affiant attended these schools through courses offered by The Virginia State Police, The Virginia Department of Forensic Science, The Virginia Department of Corrections, The Federal Bureau of Investigation, The Delaware State Police Homicide Unit, and The International Association of Homicide Investigators – the last of which your affiant is a member. Your affiant testified in United States District Court and multiple jurisdictions across the Commonwealth of Virginia involving the aforementioned violations of law. Your affiant participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving violations of the criminal code of Virginia, as well as United States Code. Your affiant is a forensic crime scene technician and a graduate of the 85th Session of the Virginia Department of Forensic Science Academy, a Crisis Negotiator, and Police Shooting Investigator. As such, your affiant has executed numerous search warrants of cellular telephones in relation to the illegal sale and possession of firearms, and manufacture and distribution of controlled substances, as well as in relation to numerous other crimes.

2

3.    Your affiant seeks authority to search a cellular phone extraction that performed

following consent; in connection with an active gang related homicide investigation. Your

affiant is in possession of a copy of the extraction report; however it has not been viewed.

4.    Your affiant has reason to believe that the owner of the cellular telephone, Walter

Battle ("BATTLE"), a documented member of the 6th and Bloody Money criminal street gang

("6BM") has violated, along with other members of his organization, 21 U.S.C. §841-

distribution and/or possession with intent to distribute controlled substances are part of a larger

conspiracy in violation of 21 U.S.C. §846-attempt and conspiracy to violation any offense as

defined in Title 21 (hereinafter the "SPECIFIED FEDERAL OFFENSES").

5.    This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.    The property to be searched is the extraction of an APPLE IPHONE 6, IMEI:

354957070565836 (hereinafter the "TARGET DEVICE"). The TARGET DEVICE is currently

located at the ATF Wilmington Field Office secured evidence storage, located at 1007 North

Orange Street, Suite 201, Wilmington, Delaware 19801.

7.    The applied-for warrant would authorize the review of the extraction pursuant to

the aforementioned violations of the United States Code. These are described in detail in

Attachment B.

8.    Your affiant contends based on the allegations herein, and further facts, set forth

in this Affidavit, that there is probable cause to believe that the TARGET DEVICE contains

evidence of violations of the SPECIFIED FEDERAL OFFENSES.

## SPECIFIED FEDERAL OFFENSES

3

9.    This investigation concerns alleged violations of the following:

a.    21 U.S.C. §841 which prohibits the distribution and/or possession with intent to distribute controlled substances.

b.     21 U.S.C. §846 which prohibits any person from attempting or conspiring to commit any offense defined in 21 U.S.C.

## TECHNICAL TERMS

10.    Based on my training and experience, your affiant uses the following technical terms to convey the following meanings:

a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

4

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

5

extremely accurate clock. Each satellite repeatedly transmits by radio a
mathematical representation of the current time, combined with a special
sequence of numbers. These signals are sent by radio, using specifications that are
publicly available. A GPS antenna on Earth can receive those signals. When a
GPS antenna receives signals from at least four satellites, a computer connected to
that antenna can mathematically calculate the antenna's latitude, longitude, and
sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used
for storing data (such as names, addresses, appointments or notes) and utilizing
computer programs. Some PDAs also function as wireless communication devices
and are used to access the Internet and send and receive e-mail. PDAs usually
include a memory card or other removable storage media for storing data and a
keyboard and/or touch screen for entering data. Removable storage media include
various types of flash memory cards or miniature hard drives. This removable
storage media can store any digital data. Most PDAs run computer software,
giving them many of the same capabilities as personal computers. For example,
PDA users can work with word-processing documents, spreadsheets, and
presentations. PDAs may also include global positioning system ("GPS")
technology for determining the location of the device.

f.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller
than a notebook, that is primarily operated by touching the screen. Tablets
function as wireless communication devices and can be used to access the Internet
through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets

typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static – that is, long-term – IP addresses, while other computers have dynamic – that is, frequently changed – IP addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/iphone-6s/specs/, your affiant knows that the TARGET DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Your affiant also know that iPhones function is much the

7

same was a tablets and have many if not all of the same capabilities. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

12.     Based on my knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

13.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

8

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14.  *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

15.  *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## PROBABLE CAUSE

16.     On June 24, 2018, your affiant is aware that BATTLE entered an active homicide crime scene.  The victim of said homicide was Curtis Gregory.  BATTLE entered the scene by lifting the crime scene tape and walking through the scene.  Patrol officers tasked with protecting the integrity of the crime the scene observed this and immediately removed him from the area.  A short time later BATTLE entered the crime scene again, creating a disturbance.  BATTLE was then placed into custody for disorderly conduct/refusing to disperse.  BATTLE was transported to the Wilmington Police Station and questioned by Wilmington Police Department Homicide Unit Detectives.  During an interview with Det. Robert Fox, BATTLE signed a written consent form, allowing Det. Fox to search his cellular phone (hereinafter the TARGET DEVICE) by conducting a forensic extraction.

17.     On July 5, 2018, Det. Fox contacted your affiant and explained how he had viewed information from the TARGET DEVICE after gaining Battle's consent.  Det. Fox stated that the device contained numerous messages between various subjects regarding what appears to be drug transactions taking place on the west side of Wilmington within an area known as "Hilltop."

18.     Your affiant has been conducting an ongoing investigation which is focused on members of a gang identified as "6th and Bloody Money" (hereinafter "6 BM").  6 BM has, and continues to, carry out drug transactions in the Hilltop neighborhood of Wilmington.  Your affiant knows this because I have used confidential informants to purchase crack cocaine over a dozen times from members of 6 BM.  For example:

10

19.     Your affiant believes that Sirair Bailey, a known associate of Battle, is a member of 6 BM as he has "6 BM" tattooed on his right hand.  ATF CIs purchased crack cocaine from Sirair Bailey on four separate occasions.

20.     Over the course of this investigation, Battle has been observed associating with numerous individuals who have also been identified as members of "6BM".  One such individual is Daryl Grayson (a.k.a. "D-Block").  Grayson also has a '6BM' tattoo under his left eye. ATF CI's purchased crack cocaine directly from six individuals who identify themselves as or associate with members of "6BM".  This intelligence has been gathered by conducting controlled purchases of narcotics within the previously mentioned area known as "Hilltop".  Further, your affiant as well as TFO Mullin  have conducted street surveillance and viewed numerous social media postings and saw Battle  regularly associating with other members of  "6 BM".

21.     After providing Fox with a list of subjects involved with the "6 BM" investigation, Fox advised that the communications viewed in the phone involved many of the same people.  Some of those communications involved drugs.  For example, one text message stated:  "It's B.  Gotta go back to 2shots and showtime.fell off."  Based on your affiant's training and experience, your affiant believes that "2shots" refers to the stamp used on packaged heroin. Based on your affiant's training and experience, your affiant knows that drug dealers commonly mark their heroin bags with stamps for identification purposes.  By doing this, their customers will ask for a specific stamp and come back to the same dealer or group on a regular basis.  Your affiant believes that this text is expressing that one of their stamps is selling better than another, and that they need to change stamps.

22.     TFO Mullin also viewed two separate social media posts from two separate members of "6 BM".  Within these posts were members of "6 BM" posing with and expressing grief for the passing of Curtis Gregory.

23.     WPD, Homicide Detective Robert Fox provided a copy of the extraction to your affiant and made your affiant and other Agents aware that there were a numerous text messages and telephone contacts that pertained directly to your affiant's investigation into 6BM.

24.     Your affiant seeks this warrant in order to view the information extracted by Det. Fox pursuant to the written consent to search signed by BATTLE. Your affiant submits that this device and the data found, will further the investigation regarding the ongoing drug sales and violent acts being carried out by members of the 6 BM.  This submission is further supported by the fact that BATTLE is a confirmed member of "6 BM" as well as the homicide victim being a known associate of at least two of the gang's members.

## **CONCLUSION**

25.     Your affiant submits that this affidavit supports probable cause for a search

warrant authorizing the examination of the TARGET DEVICE described in Attachment A and to

seize the items described in Attachment B.

Respectfully submitted,

James H. Reisch
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me
on August 1, 2018:

HONORABLE MARY PAT THYNGE
UNITED STATES MAGISTRATE JUDGE

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IN THE MATTER OF THE SEARCH OF
THE EXTRACTION OF:

APPLE IPHONE 6S, IMEI: 354957070565836

CURRENTLY LOCATED AT:

Case No. _18-140 M_

ATF Wilmington Field Office secured
evidence storage, 1007 North Orange Street,
Suite 201, Wilmington, Delaware 19801

## ATTACHMENT A

1.      The property to be searched is an APPLE IPHONE 6S, IMEI: 354957070565836

(hereinafter the "TARGET DEVICE").  The TARGET DEVICE is currently located at the ATF

Wilmington Field Office secured evidence storage, 1007 North Orange Street, Suite 201,

Wilmington, Delaware 19801.

        This warrant authorizes the review of a previously conducted forensic examination of the

TARGET DEVICE for the purpose of identifying the electronically stored information described

in Attachment B.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF
THE EXTRACTION OF:

APPLE IPHONE 6S, IMEI: 354957070565836

CURRENTLY LOCATED AT:

ATF Wilmington Field Office secured
evidence storage, 1007 North Orange Street,
Suite 201, Wilmington, Delaware 19801

Case No. _18-140 M_

## ATTACHMENT B

1.     All records on the TARGET DEVICE described in Attachment A that relate to

violations of 21 U.S.C. §841-distribution and/or possession with intent to distribute controlled

substances are part of a larger conspiracy in violation of 21 U.S.C. §846-attempt and conspiracy

to violation any offense as defined in Title 21 (the "SPECIFIED FEDERAL OFFENSES") and

involve BATTLE since March 1, 2018, including:

a.   Any electronic calendars, notes, task lists, contacts, incoming and/or outgoing

calls, or other information relating to any person's whereabouts or activities

relevant to violations of the "SPECIFIED FEDERAL OFFENSES";

b.   Images, pictures, photographs, videos, or other visual depictions sent or received

by the TARGET DEVICE regardless of the underlying program used to create,

store, send, or receive such depictions relating to violations of the "SPECIFIED

FEDERAL OFFENSES";

c.   GPS data showing the location and movement of the TARGET DEVICE from

March 1, 2018, to present;

    d.   Bank records, checks, credit card bills, account information, and other financial records related to violations of the "SPECIFIED FEDERAL OFFENSES"; and

    e.   The content of any and all text messages or instant messages sent or received by the TARGET DEVICE regardless of the underlying program used to send and receive those messages relating to violations of the "SPECIFIED FEDERAL OFFENSES."

    f.   Social Media accounts, including messages sent or received through Social Media by the TARGET DEVICE relating to violations of the "SPECIFIED FEDERAL OFFENSES."

2.    Evidence of user attribution showing who used or owned the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.



2